❏ Original          ❏ Dup



CLERK'S OFFICE
A TRUE COPY
Apr 05, 2022
SDDI
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  22-M-365 (SCD) |
| The person of Viridiana Garcia-Ramirez (DOB: 04/13/1998) | ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A3.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

4-19-22

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Stephen C. Dries, United States Magistrate Judge___ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      4-5-22 10:40 am          *(signature)*
                                                                              *Judge's signature*

City and state:   Milwaukee, Wisconsin                   Stephen C. Dries, United States Magistrate Judge
                                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

              _____
                              *Executing officer's signature*

              _____
                                *Printed name and title*

## ATTACHMENT A3

## Person to be searched

The person to be searched is the person of Viridiana Garcia-Ramirez (DOB: 04/13/1998).

**ATTACHMENT B**

*Property to be seized*

1.      ATF Form 4473s, firearms, firearm boxes, bipods, tripods, upper receivers, receipts and any records related to firearms, firearms accessories, ammunition, financial documents that transfer of proceeds of the above schemes, computers, electronics capable of communication, and cellphones such as:

      a.  lists of contacts and any identifying information;

      b.  photographs, videos, or other media storage connected to firearms;

      c.  types, amounts, and prices of firearms purchased/sold;

      d.  any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

      e.  all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

      f.  any and all financial records connected to the purchase/sale of firearms;

2.      Cellphones, computers, and all media storage devices that may hold documentation regarding firearm or ammunition purchases/sales and customers;

3.      Any and all financial records connected to the purchase/sale of firearms, and any correspondence between suspects and other firearms sellers and/or purchasers;

4.      All bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

5.      Proceeds of firearms trafficking activities, including United States currency;

5

6.      All bank records, checks, credit card bills, account information, and other financial records; Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

7.      Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearms trafficking activities;

8.      Documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm trafficking activities;

9.      Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

10.     Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data;

11.     Indicia of occupancy, residency or ownership of the premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys;

12.     Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

13. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

14. All records relating to violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license), 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922(a)(6) (false statement to a federal firearms licensee), 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy), involving VIRIDIANA GARCIA-RAMIREZ or DEANDRE LANEY RODGERS, including:

   a. Records and information relating to a conspiracy to violate the laws of the United States, including the scope, manner, means, acts in furtherance, and identity of any co-conspirators;

   b. Records and information relating to the identity or location of the suspects;

   c. Records and information relating to communications with Internet Protocol addresses;

   d. Records and information relating to the crimes referenced in Attachment B, paragraph 14; and

   e. Records and information relating to intent or state of mind.

15. Computers or storage media used as a means to commit the violations described above;

7

16. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

8

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j.  documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.  contextual information necessary to understand the evidence described in this attachment.

17.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

18.     The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or

9

storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

19.     The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

10



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The person of Viridiana Garcia-Ramirez (DOB:<br>04/13/1998) | )<br>)<br>)<br>)<br>)<br>) |

Case No. **22-M-365 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A3.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(a)(1)(A), 922 (d), 922(a)(6), 922(g)(1), and 371 | dealing in firearms without a license, transferring a firearm to a prohibited person, false statement to a federal firearms licensee, unlawful possession of firearms and ammunition, and conspiracy to do the same |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

GABRIEL LOWRANCE   Digitally signed by GABRIEL LOWRANCE
Date: 2022.04.05 08:23:02 -05'00'

*Applicant's signature*

Gabriel Lowrance, Special Agent (ATF)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 04/05/2022 _____

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Stephen C. Dries, United States Magistrate Judge

*Printed name and title*

CLERK'S OFFICE<br>A TRUE COPY<br>Apr 05, 2022<br>S/JDH<br>Deputy Clerk, U.S. District Court<br>Eastern District of Wisconsin

**AFFIDAVIT IN SUPPORT OF
APPLICATIONS FOR SEARCH WARRANTS**

I, Gabriel H. Lowrance, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of applications under Rule 41 of the Federal Rules

of Criminal Procedure for warrants to search the premises located at Room 207 of the Knights Inn,

located at 1149 Oakes Road, Mt. Pleasant, Wisconsin 53406, the premises located at 5107 Byrd

Avenue, Unit 211, Racine, Wisconsin 53406, the person of Viridiana Garcia-Ramirez (DOB:

04/13/1998), and a black 2003 Kia Sorento bearing Wisconsin license plate AHY-2116.

(collectively, "PREMISES, PERSON, and VEHICLE"), further described in Attachments A1, A2,

A3, and A4 (collectively, "Attachments A"), for the things described in Attachment B:

A1.    The premises located at Room 207 of the Knights Inn, located at 1149 Oakes

Road, Mt. Pleasant, Wisconsin 53406;

A2.    The premises located at 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406;

A3.    The person of Viridiana Garcia-Ramirez (DOB: 04/13/1998); and

A4.    A black 2003 Kia Sorento bearing Wisconsin license plate AHY-2116.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF) and have been since 2020.  I have received training at the Federal Law

Enforcement Training Center in Glynco, Georgia. I attended the Criminal Investigator Training

Program, as well as ATF's Special Agent Training Program. With the ATF, I have received

training and participated in numerous investigations into firearms trafficking, unlawful possession of firearms by prohibited persons, unlawful use of firearms, and drug trafficking.

3.    Before I joined the ATF, I served as a police officer with the Robinson Police Department in Illinois and the Lake Havasu City Police Department in Lake Havasu City, Arizona. During part of my career as a police officer, I conducted investigations into street gangs, narcotics distribution, firearms violations, and violent crime.

4.    I have participated in numerous firearm trafficking and drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. On numerous occasions, this electronic evidence has proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

5.    Based on my training, experience and participation in drug trafficking and firearms trafficking investigations, I know and have observed the following:

a.    I have relied informants to investigate firearms trafficking and drug trafficking. Through informant interviews and debriefings of individuals involved in those offenses, I have learned about the manner in which individuals and organizations finance, purchase, transport, and distribute firearms and narcotics both within and outside of Wisconsin. I have utilized informants to conduct "controlled purchases"

2

of firearms and controlled substances from individuals, as opposed to licensed gun dealers. I have also conducted surveillance of individuals engaged in firearms and drug trafficking and participated in the execution of numerous search warrants resulting in the seizure of drugs, firearms, ammunition, and magazines.

b. Based on my training and experience, I have become familiar with the language utilized over the telephone to discuss firearms and drug trafficking and know that the language is often limited, guarded, and coded. I also know that firearms and drug traffickers often use electronic devices (such as computers and cellular phones) and social media to facilitate these crimes. Based on my experience, I know that firearms traffickers may keep photographs of these items on electronic devices.

c. I also know that drug traffickers and firearms traffickers commonly possess—on their person, at their residences, at their places of business, in their vehicles, and other locations where they exercise dominion and control—firearms, ammunition, and records or receipts pertaining to such.

d. I know that firearms traffickers and drug traffickers often put their telephones in nominee names to distance themselves from telephones that are utilized to facilitate these and related offenses. I also know that firearm and drug traffickers often use proceeds to purchase assets such as vehicles, property, jewelry, and narcotics. I also know that firearm and drug traffickers often use nominees to purchase or title these

3

assets to avoid scrutiny from law enforcement.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

7.     There is probable cause to believe that evidence of violations of the following laws of the United States, including the things described in Attachment B, will be found in the property listed in Attachments A, respectively: 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license), 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922(a)(6) (false statement to a federal firearms licensee), 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy).

## PROBABLE CAUSE

8.     On November 7, 2021, the Mount Pleasant Police Department received a call for service requesting a welfare check on VIRIDIANA GARCIA-RAMIREZ. The call was made by Yazmin Cortez. In the notes section, that call for service read as follows: "17 calling from california/would like the welfare of her 2 yo nieces checked/childrens parents are viridiana Garcia 4-13-1998 and the father deandre l rodgers 4-8-1986/17 concerned because they are moving from hotel to hotel and were using 17s fathers credit card which he now cancelled/deandre uses meth and viridiana uses marijuana/no known weapons/17 doesnt know what room they are in/viridiana cell phone # 424-946-0032/they dont have a vehicle, they use lyft/17 would like a call back with

4

results. Based on my training and experience, I know "17" is police code for complainant. The notes from that welfare check further indicate that officers of the Mount Pleasant Police Department went to the Knights Inn located at 1149 Oakes Road, Room 122, Mt. Pleasant, Wisconsin, and spoke with a neighbor. That neighbor indicated that the male, female, and child left approximately 20 minutes before the police arrived, and the officers were unable to contact RODGERS or GARCIA-RAMIREZ.

9.    Case agents have reviewed firearm transaction records related to firearm purchases by Viridiana GARCIA-RAMIREZ. The purchases took place from December 2021 to March 2022 and were made at Dunham's Sports located at 5600 Durand Avenue, Racine, Wisconsin 53406, Dunham's Sports located at 6525 South 27th, Street, Franklin, Wisconsin 53132, and Paladin Protection Armory located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin 53142.

10.    On December 19, 2021, Viridiana GARCIA-RAMIREZ purchased a Taurus International Model G2C 9mm pistol bearing serial number ACC726964 and a Glock Model 43 9mm pistol bearing serial number AFYZ003. I obtained video surveillance footage from this purchase, which showed GARCIA-RAMIREZ with a male wearing a black shirt and hood.  The male is consistent with Deandre RODGERS, the known boyfriend of GARCIA-RAMIREZ. Both individuals appear to be with two young children. I know that RODGERS and GARCIA-RAMIREZ to have twin daughters in common. In the video, RODGERS and GARCIA-RAMIREZ appear to be looking over the firearm selection together.  At one point, RODGERS is seen pointing to the firearms in the glass display case.  GARCIA-RAMIREZ walks to RODGERS and also points

5

towards the same area. RODGERS appears to walk away as GARCIA-RAMIREZ points at the case and look in the direction behind the counter. GARCIA-RAMIREZ again points towards the case, and RODGERS returns and takes a squatting position and appears to be looking where GARCIA-RAMIREZ pointed. Both GARCIA-RAMIREZ and RODGERS appear to be discussing and pointing at the firearms in the display case. GARCIA-RAMIREZ can later be seen completing the purchase documents for the firearm with RODGERS standing behind her away from the counter. Screenshots from the Dunham's surveillance video are depicted below:



6







11.     During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form. (The address at 5107 Byrd Avenue, Unit 211, Racine, Wisconsin is also DEANDRE RODGERS's registered address with the Wisconsin Department of Transportation.)

12.     On December 24, 2021, Viridiana GARCIA-RAMIREZ purchased a Taurus Model G3C 9mm pistol bearing serial number ACK399523 from Dunham's Sports. I obtained video surveillance footage from this purchase, which showed GARCIA-RAMIREZ with the same children as the purchase on December 19, 2021. As GARCIA-RAMIREZ stands at the counter,

8

she appears to be looking at an item in her hands consistent with that of a cellular phone. That phone is consistent with the size of a smartphone. For a period of time, GARCIA-RAMIREZ appears to be alone with the children. She then appears to point to the display case, and a male walks up from the aisle behind her. The male is wearing a dark jacket with a hood and appears to be consistent with that of Deandre RODGERS. The two appear to discuss and point at the display case. A member of the staff appears to walk to the counter where RODGERS and GARCIA-RAMIREZ are standing. RODGERS appears to be pointing down towards the display case and looks at the employee. RODGERS appears to be speaking with the employee. Screenshots from the Dunham's surveillance video are depicted below:







10





11

13.     During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

14.     On December 30, 2021, Viridiana GARCIA-RAMIREZ purchased a GSG/Blue Line Solutions LLC Model GSG-16 .22 long rifle bearing serial number B106993. The surveillance video for this purchase could not be provided by Dunham's. Dunham's Sports provided receipts for the transactions. During the transaction, .22lr caliber ammunition was purchased for $24.99.

15.     During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

16.     On January 16, 2022, Viridiana GARCIA-RAMIREZ purchased an ACP Philippines/AP International-Pahrump NV Model 206 .38 special revolver bearing serial number RIA2339226 from Dunham's. I obtained video surveillance footage from this purchase, which showed GARCIA-RAMIREZ with the same children as the previous purchases and RODGERS. RODGERS can be seen pointing at the firearms display case and talking to GARCIA-RAMIREZ.

12

GARCIA-RAMIREZ can later be seen completing the required purchasing documents. RODGERS can be seen standing near GARCIA-RAMIREZ as she completed the paperwork. Screenshots from the Dunham's surveillance video are depicted below:





17. During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

18. On January 21, 2022, Viridiana GARCIA-RAMIREZ purchased a Taurus Armas/Taurus International Model 856 .38 special revolver bearing serial number ACK414488 from Dunham's. I obtained video surveillance footage from this purchase, which showed GARCIA-RAMRIEZ with RODGERS. RODGERS can be seen pointing at the display case and appears to be talking with GARCIA-RAMIREZ. An employee approaches the display case and appears to assist GARCIA-RAMIREZ. As the employee approaches, RODGERS walks away.

14

The employee can be seen removing a firearm from the display case in the area where RODGERS was pointing. Screenshots from the Dunham's surveillance video are depicted below:





19.     During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

20.     On January 30, 2022, Viridiana GARCIA-RAMIREZ purchased a Ruger Model LCP .380 caliber auto pistol bearing serial number 379035490. I obtained video surveillance footage from this purchase, which showed GARCIA-RAMIREZ with RODGERS.  Both appear to be looking in the display case and talking. RODGERS appears to be using a cellphone after

16

walking away from the firearms display case. RODGERS continued to look at firearms in the display cases. GARCIA-RAMIREZ can be seen standing over RODGERS and appears to be using a cellphone. RODGERS can be seen pointing into a display case. An employee, identified by Dunham's as Martese Wright, retrieves two firearms from the display case. GARCIA-RAMIREZ appears to be handed one firearm by RODGERS. RODGERS is handed a third firearm from the display case, but is only handled by RODGERS. RODGERS later walks to another display case. Wright appears to open another display and hand a firearm to RODGERS. RODGERS appears to be looking the firearm over as he turns it in his hands. GARCIA-RAMIREZ can be see standing close to RODGERS as he manipulates the firearm. The firearm is returned to Wright, and it is placed in the display case. RODGERS and GARCIA-RAMIREZ then walk away in separate directions. RODGERS appears to continue to browse the display cases and use a cellphone. GARCIA-RAMIREZ can be seen completing the purchase documents for the firearm. While waiting, GARCIA-RAMIREZ can be seen holding the firearm that had been removed from the case. Screenshots from the Dunham's surveillance video are depicted below:

17





18





19





21.     During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin

identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided

20

the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

22.     On February 11, 2022, Viridiana GARCIA-RAMIREZ purchased a Taurus Armas/Taurus International Model 856 .38 special revolver bearing serial number ACK450181. I obtained video surveillance footage from this purchase, which showed GARCIA-RAMRIEZ with RODGERS. Both appear to be looking in the display case and talking. Both appear to be assisted by an employee identified by Dunham's as Nigel Scott. RODGERS appears to pick up a white box from the counter, consistent with that of ammunition. Screenshots from the Dunham's surveillance video are depicted below:





23.     During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

24.     On February 24, 2022, Viridiana GARCIA-RAMIREZ purchased a Smith & Wesson Shield M2.0 9mm pistol bearing serial number JNW8532, equipped with a red laser beam. During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual

22

transferee/buyer of the firearm(s) listed on this form.

25. On February 24, 2022, case agents with the ATF conducted surveillance at the Knights Inn Racine, located at 1149 Oakes Road, Room 207, Racine, Wisconsin 53406, and observed a black male with glasses, believed to be DEANDRE RODGERS, enter Room 207.

26. On March 15, 2022, Viridiana GARCIA-RAMIREZ purchased a Glock Model 26 9mm pistol bearing serial number BWHW613 from Paladin Protection Armory, located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin 53142. During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

27. On March 25, 2022, case agents with the ATF conducted surveillance at the Knights Inn Racine, located at 1149 Oakes Road, Room 207, Racine, Wisconsin 53406. At approximately 1:38 p.m., case agents observed DEANDRE RODGERS emerge from Room 207 and return a short time later, and then observed VIRIDIANA GARCIA-RAMIREZ leave Room 207 with two small children about 10 minutes later and get into a black 2003 Kia Sorento bearing Wisconsin license plate AHY-2116. Case agents recognized the two small children from surveillance footage of GARCIA-RAMIREZ purchasing firearms at Dunham's Sports in Racine, Wisconsin. A few minutes later, RODGERS again left Room 207 and got into the same black 2003 Kia Sorento

23

bearing Wisconsin license plate AHY-2116.

28.     On March 29, 2022, Viridiana GARCIA-RAMIREZ purchased a Glock Model 27 .40 caliber pistol bearing serial number BWEL646 from Paladin Protection Armory, located at 7528 Pershing Boulevard, Suite B, Kenosha, Wisconsin 53142. During the transaction, GARCIA-RAMIREZ identified herself with a Wisconsin identification card and a place of birth as Los Angeles, California. GARCIA-RAMIREZ provided the address of 5107 Byrd Avenue, Unit 211, Racine, Wisconsin 53406, as her residence. On the ATF Form 4473 ("Firearms Transaction Record"), GARCIA-RAMIREZ indicated that she was the actual transferee/buyer of the firearm(s) listed on this form.

29.     On March 30, 2022, Viridiana GARCIA-RAMIREZ purchased Smith & Wesson Shield M2.0 9mm pistol bearing serial number JNV3985, equipped with a red laser beam from the Dunham's Sports, located at 6525 South 27th Street, Franklin, Wisconsin 53132. This is the same model firearm that GARCIA-RAMIREZ purchased on February 24, 2022 from Dunham's Sports in Racine, Wisconsin. I spoke with a Key Team Manager at Dunham's Sports in Franklin, Wisconsin about the GARCIA-RAMIREZ's purchase on March 30, 2022.  The Key Team Manager stated that GARCIA-RAMIREZ was accompanied by a black male during the purchase, along with two small children who the Key Team Manager believed to be twin girls. The Key Team Manager stated the male asked for a Smith & Wesson with a "red laser." The male then looked at the Smith & Wesson pistols with a red laser.  The Key Team Manager removed the Smith & Wesson from the case, and GARCIA-RAMIREZ held the firearm.  The Key Team Manager

24

stated she did not feel GARCIA-RAMIREZ knew much about the Smith & Wesson pistol. GARCIA-RAMIREZ stated she wanted a pistol with a "green laser" and also stated she had been to Dunham's in Racine, Wisconsin and could not locate one. The male asked GARCIA-RAMIREZ if she wanted a "Hellcat" with a green laser and also told GARCIA-RAMIREZ that "color did not matter." During the transaction, the Key Team Manager asked GARCIA-RAMIREZ if the firearm was for her or the male. GARCIA-RAMIREZ stated the firearm was for her and not the male. GARCIA-RAMIREZ appeared to be more knowledgeable about the "hellcat". I know a "Hellcat" is a model of semi-automatic 9mm pistol manufactured by Springfield Armory and can be equipped with a laser beam sight.

30.     Each of the firearms described above is between a few and several hundred dollars.

31.     On April 2, 2022, officers of the Racine Police Department conducted a traffic stop of the black 2003 Kia Sorento bearing Wisconsin license plate AHY-2116 in 1500 block of South Green Bay Road. The driver of the vehicle was DEANDRE RODGERS, and GARCIA-RAMIREZ was in the front passenger seat. RODGERS was cited for a traffic violation and arrested for an active child support warrant. During the traffic stop, GARCIA-RAMIREZ asked to speak with RODGERS at his request. The officer told GARCIA-RAMIREZ that he would need to search her purse if she wished to speak with RODGERS in close proximity to the police squad car. GARCIA-RAMIREZ gave the officer consent, and she stated that she had a valid concealed carry permit. An officer seized a loaded Glock Model 27 .40 caliber pistol bearing serial number BWEL646 from GARCIA-RAMIREZ's purse. During the traffic stop, RODGERS asked that all of his

property be turned over to GARCIA-RAMIREZ and told the officer that they are currently living at the Knights Inn located at 1149 Oaks Road, Mt. Pleasant, Wisconsin. Officers offered to drive the vehicle to a parking lot to avoid towing, since GARCIA-RAMIREZ is not licensed to drive. RODGERS provided the officer consent to search the vehicle, and the officers found three boxes of 60 rounds of live ammunition and a receipt from Dunham's Sports in Racine, Wisconsin for those three boxes of ammunition. Those items were purchased on April 2, 2022 at 13:30 hours according to the receipt—about 10 minutes before the traffic stop.

32. After the traffic stop, I interviewed DEANDRE RODGERS. During that interview, RODGERS said that GARCIA-RAMIREZ know that he is a felon. He also said that he provided her with $100 to purchase ammunition on April 2, 2022—the date of his arrest—to go to the firing range on April 4, 2022. RODGERS provided an address of 1149 Oakes Road, Unit 207, Mount Pleasant, Wisconsin. He also provided his phone number as 414-676-7735. He provided GARCIA-RAMIREZ's phone number as 424-946-0032. RODGERS stated Viridiana GARCIA-RAMIREZ goes to a shooting range somewhere near 6 Mile Road in Racine, Wisconsin. I determined this shooting range to be The Shooter's Sports Center Inc. located at 4900 6 Mile Road, Racine, Wisconsin 53402.

33. On April 2, 2022, I obtained reviewed firearms range sign-in forms from The Shooter's Sports Center Inc. Those sign-in forms showed "Viridiana G" on a form dated March 18, 2022, with the phone number 424-946-0032, followed immediately by the name "Deandre R" with the phone number 414-676-7735. I know those phone numbers to be used by GARCIA-

26

RAMIREZ and RODGERS, respectively. Those sign-in forms also showed "Viridiana G" on a form dated March 22, 2022, followed immediately by the name "Deandre R." I obtained video footage of the above dates and times from Shooter's Sports Center Inc. I observed GARCIA-RAMIREZ and RODGERS firing two separate handguns in two separate shooting lanes on video. The Shooter's Sports Center Inc. stated they do not ask for identification from individuals who bring their own firearms to the business. GARCIA-RAMIREZ and RODGERS were not asked for identification because they provided their own firearms and were then not required to complete the address field on the form.

34.    Case agents have also reviewed jail calls from DEANDRE RODGERS after his arrest on April 2, 2022. Some of those calls are summarized here. On April 2, 2022, RODGERS's placed a phone call to 424-946-0032 at 16:56 hours—the phone number for GARCIA-RAMIREZ. RODGERS told GARCIA-RAMIREZ that he was talked to by ATF. RODGERS believed the ATF interviewed him because he filed a false report with the Racine Police Department about GARCIA-RAMIREZ. On or about March 4, 2022, I know that a report was filed with the Racine Police Department stating that "Dariana Garcia" was selling firearms. The report also provided the phone number 424-946-0032, the phone number for GARCIA-RAMIREZ. GARCIA-RAMIREZ later states: "I still got to go to work, you know what I mean?" RODGERS and GARCIA-RAMIREZ discuss the firearm located during his arrest. He then instructs GARCIA-RAMIREZ to have a "heads up" if "they" come to talk to her at the hotel or "anywhere else" and to not lie. RODGERS again discusses the report he made to RPD. RODGERS stated to GARCIA-

27

RAMIREZ they should have gone "straight to the spot" and not "procrastinating." GARCIA-RAMIREZ stated she is going to "the spot."

35.     On April 2, 2022, RODGERS's placed a phone call to 424-946-0032 at 2003 hours- - the phone number for GARCIA-RAMIREZ.  When asked about her gun being taken, GARCIA-RAMIREZ stated it was the "27" and "there ain't shit behind that" and she has not used it. I know that GARCIA-RAMIREZ was in possession of a Glock model 27 pistol during the arrest of RODGERS.  GARCIA-RAMIREZ stated what "worries" her about it is if "they" ask her "where are they? Prove that you still have them." RODGERS again states that he believes he was talked to by ATF because of the false report he made to the Racine Police Department about GARCIA-RAMIREZ. GARCIA-RAMIREZ asked RODGERS: "What's going to happen with your P.O. in Cali?"  RODGERS responded by stating: "Don't mention that."  RODGERS believes the "P.O." will not find out because the arrest was not "criminal." GARCIA-RAMIREZ also stated she went to "Michelle's" house after receiving a phone call to "clean the house." GARCIA-RAMIREZ gave "Michelle" what she "asked for."  Michelle also asked if she could have "it for free." GARCIA-RAMIREZ stated she was asked by "Michelle" when she (GARCIA-RAMIREZ) goes to work for her (Michelle) if she can get "double for one?"  RODGERS stated he will "tax her bitch ass now." GARCIA-RAMIREZ stated she was told to call an unknown male she identified as "Scott" while talking about prices with "Michelle."

36.     On April 4, 2022, RODGERS placed a phone call to 424-946-0032—the phone number for GARCIA-RAMIREZ. RODGERS stated he was interviewed again on this date about

GARCIA-RAMIREZ and firearms. RODGERS states "that move" would look suspicious to "them." RODGERS asks GARCIA-RAMIREZ to not leave until "these folks" find out "what we did was nothing, no illegal shit." RODGERS states if GARCIA-RAMIREZ leaves and he cannot contact her, he does not know what "other bullshit" will come. RODGERS indicates he believes the interview conducted by ATF on April 2, 2022 was to get him to talk about "what was going on." RODGERS states to GARCIA-RAMIREZ they need to "stick together" because he does not want "to see you go to jail." He also does not want "them" to believe that she is "running from something."

37.     On April 4, 2022, I observed a black 2010 Chevrolet Equinox bearing Wisconsin temporary license plate V1638G and vehicle identification number 2CNFLGEW8A6321722 registered to Deandre Laney Rodgers at 5107 Byrd Avenue, Unit 211, Racine, Wisconsin parked in front of Room 207 of the Knights Inn, located at 1149 Oakes Road, Mt. Pleasant, Wisconsin 53406.

38.     Based on my training and experience, I know that "straw buying" is often used to provide a firearm to a person who cannot legally purchase one or to conceal the true owner of that firearm.

39.     As described above, there is probable cause to believe that evidence of these crimes is contained in VIRIDIANA GARCIA-RAMRIREZ's cellphone and DEANDRE RODGERS's cellphone, and that these cellphone(s) are instrumentalities of these crimes. There is also probable cause to believe that their cellphones will be found on their persons or in their presence. Based on

29

my training and experience, I know that people often carry their cellular devices on their person or in their presence. There is also probable cause to believe that evidence of firearms transactions (such as receipts), financial information (such as credit cards, debit cards, checks, and bank records), and the proceeds of the crimes described above will be found on his person or in his personal effects. I know that people often keep and carry receipts, credit cards, debit cards, checks, currency, and other financial information in wallets, purses, and other personal effects. For that reason, there is probable cause to search the person of VIRIDIANA GARCIA-RAMIREZ and to seize the items described in Attachment B.

40.     Based on a review of publicly-accessible court records, RODGERS has previously been convicted of battery by a prisoner, a felony, in violation of Wisconsin Statute 940.20(1), in Racine County Case Number 2002CF000075. He is, therefore, prohibited from possessing firearms and ammunition, pursuant to 18 U.S.C. § 922(g)(1).

## **TECHNICAL TERMS**

41.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a.  IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—

30

IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

42. As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, PERSON, and VEHICLE, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

43. *Probable cause.* I submit that if a computer or storage medium is found on the PREMISES, PERSON, and VEHICLE, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

    i. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file

31

does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

    ii.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    iii.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    iv.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

44.    *Forensic evidence.* As further described in Attachment B, these applications seek permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrants, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES, PERSON, and VEHICLE, because:

    i.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs

32

store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

ii. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated

33

camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

iii. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

iv. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

v. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

45. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrants. In lieu of removing storage media from the premises, it is sometimes possible to make

34

an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

i. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrants call for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrants can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

ii. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

iii. Variety of forms of electronic media. Records sought under these warrants could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

46. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying

35

storage media that reasonably appear to contain some or all of the evidence described in the warrants, and would authorize a later review of the media or information consistent with the warrants. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrants.

47. Because several people share the PREMISES and VEHICLE, listed in Attachments A1, A2, and A4 as residences and a vehicle, it is possible that the PREMISES and VEHICLE will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that that it is possible that the things described in these warrants could be found on any of those computers or storage media, the warrants applied for would permit the seizure and review of those items as well.

## CONCLUSION

48. I submit that this affidavit supports probable cause for warrants to search the PREMISES, PERSON, and VEHICLE described in Attachments A, and seize the items described in Attachment B.

## **ATTACHMENT A3**

### **Person to be searched**

The person to be searched is the person of Viridiana Garcia-Ramirez (DOB: 04/13/1998).

3

## ATTACHMENT B

*Property to be seized*

1.  ATF Form 4473s, firearms, firearm boxes, bipods, tripods, upper receivers, receipts and any records related to firearms, firearms accessories, ammunition, financial documents that transfer of proceeds of the above schemes, computers, electronics capable of communication, and cellphones such as:

    a.  lists of contacts and any identifying information;

    b.  photographs, videos, or other media storage connected to firearms;

    c.  types, amounts, and prices of firearms purchased/sold;

    d.  any information related to sources or purchasers of firearms (including names, addresses, phone numbers, or any other identifying information);

    e.  all bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

    f.  any and all financial records connected to the purchase/sale of firearms;

2.  Cellphones, computers, and all media storage devices that may hold documentation regarding firearm or ammunition purchases/sales and customers;

3.  Any and all financial records connected to the purchase/sale of firearms, and any correspondence between suspects and other firearms sellers and/or purchasers;

4.  All bank records, checks, credit card bills, account information, and other financial records related to firearms commerce;

5.  Proceeds of firearms trafficking activities, including United States currency;

5

6. All bank records, checks, credit card bills, account information, and other financial records; Financial records, documents, statements, or other evidence of control of bank or other financial accounts and investment funds;

7. Personal address books, telephone bills, photographs, letters, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in firearms trafficking activities;

8. Documents and deeds reflecting the purchase or lease of items obtained with the proceeds from firearm trafficking activities;

9. Records of off-site locations to store proceeds and other records, including safes, vaults, or lock boxes, safe deposit box keys, records and receipts and rental agreements for storage facilities;

10. Records of mail and communications services, cellular telephones and all electronic storage areas on the device including stored telephone numbers, recently called numbers list, text messages, digital audio and or video recordings, pictures, settings, and any other user defined settings and/or data;

11. Indicia of occupancy, residency or ownership of the premises, including utility bills, telephone bills, loan payment receipts, addressed envelopes, escrow documents and keys;

12. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

6

13.     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

14.     All records relating to violations of 18 U.S.C. § 922(a)(1)(A) (engaging in a firearms business without a license), 18 U.S.C. § 922(d) (transferring a firearm to a prohibited person), 18 U.S.C. § 922(a)(6) (false statement to a federal firearms licensee), 18 U.S.C. § 922(g)(1) (unlawful possession of firearms and ammunition), and 18 U.S.C. § 371 (conspiracy), involving VIRIDIANA GARCIA-RAMIREZ or DEANDRE LANEY RODGERS, including:

    a.   Records and information relating to a conspiracy to violate the laws of the United States, including the scope, manner, means, acts in furtherance, and identity of any co-conspirators;

    b.   Records and information relating to the identity or location of the suspects;

    c.   Records and information relating to communications with Internet Protocol addresses;

    d.   Records and information relating to the crimes referenced in Attachment B, paragraph 14; and

    e.   Records and information relating to intent or state of mind.

15.     Computers or storage media used as a means to commit the violations described above;

7

16.     For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

8

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

17.     As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

18.     The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or

9

storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

19.     The term "storage medium" includes any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.